(86 South. 93)

TYLER v. STATE. (8 Div. 714.)

(Court of Appeals of Alabama. June 15, 1920.)

1. CRIMINAL LAW ⬤⬤561(2) — ELEMENTS OF RECEIVING STOLEN GOODS MUST BE PROVED BEYOND REASONABLE DOUBT.

To sustain a conviction for receiving stolen goods, it must be shown beyond a reasonable doubt that within three years before the beginning of the prosecution the goods were primarily stolen, that the defendant bought or received them, or concealed or aided in concealing them, with the knowledge that they had been stolen, and without the intent of restoring them to their rightful owner.

2. RECEIVING STOLEN GOODS ⬤⬤8(3)—NECESSARY INGREDIENTS MAY BE SHOWN BY CIRCUMSTANTIAL EVIDENCE.

All the necessary ingredients of the crime of receiving stolen goods may be, and most of them usually are, shown by circumstantial evidence from which the jury, using their everyday common sense and observation, must draw their conclusions.

3. RECEIVING STOLEN GOODS ⬤⬤2 — EXACT DATE PROPERTY WAS STOLEN IMMATERIAL.

In a prosecution for receiving stolen goods, the exact date when the property was stolen is immaterial, so long as it appears to have been stolen at the time the defendant got it.

4. CRIMINAL LAW ⬤⬤304(2) — COMMON KNOWLEDGE THAT PULLMAN COMPANY IS NOT ENGAGED IN TRADE.

It is a matter of common knowledge that the Pullman Company is not engaged in trade, and hence its name on linens or other articles owned by it is not a trade-mark, but is placed there for the purpose of identification.

5. RECEIVING STOLEN GOODS ⬤⬤2 — PLACE WHERE GOODS WERE STOLEN IMMATERIAL.

In a prosecution for receiving stolen goods, it is immaterial where the goods were stolen.

6. RECEIVING STOLEN GOODS ⬤⬤8(4), 9(2)— GUILTY KNOWLEDGE MAY BE SHOWN BY CIRCUMSTANCES, AND COURT MAY INSTRUCT JURY RELATIVE THERETO.

Guilt of one receiving stolen goods may be inferred by a jury from facts and circumstances, in the absence of proof of actual knowledge; and if certain specific facts exist, which would charge a reasonably prudent man with notice, the trial court is authorized to instruct the jury that they would be warranted in finding that the defendant had knowledge that the goods were stolen.

7. RECEIVING STOLEN GOODS ⬤⬤9(1) — EVIDENCE WARRANTING SUBMISSION OF GUILTY KNOWLEDGE TO JURY.

In a prosecution for receiving stolen goods, evidence as to circumstances *held* to render it proper to submit the question of defendant's knowledge that the goods were stolen to the jury.

8. RECEIVING STOLEN GOODS ⬤⬤8(2) — DEFENDANT ENTITLED TO SHOW HE HAD NO KNOWLEDGE OF RULE THAT PULLMAN COMPANY DID NOT SELL BLANKETS, ETC.

In a prosecution for receiving stolen goods, consisting of blankets and linens having the name "Pullman Company" marked thereon, where the state had shown that it was a rule or custom of the Pullman Company not to sell any such articles, but that they destroyed them when worn out, it was reversible error not to permit the defendant to testify that he had no notice or knowledge of such a rule.

Appeal from Circuit Court, Colbert County; O. P. Almon, Judge.

A. C. Tyler was indicted and convicted of the offense of buying, receiving, or concealing stolen property, and from the judgment he appeals. Reversed and remanded.

Nathan & Nathan, of Sheffield, for appellant.

The evidence is not sufficient to sustain the verdict, and the court should have grant-

---

⬤⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 493.

ed defendant a new trial. 34 Cyc. 515; 150 Ala. 101, 43 South. 204; 174 Ala. 71, 57 South. 245. On these authorities the court erred in refusing the defendant permission to explain his possession. 167 Ala. 85, 52 South. 417.

J. Q. Smith, Atty. Gen., for the State.
No brief reached the Reporter.

SAMFORD, J. The property alleged to have been stolen consisted of blankets and linen marked "Pullman Company" in such conspicuous way as to be easily seen and read by any person handling the articles. The evidence showed without dispute that the Pullman Company had missing or stolen at Sheffield, Ala., the home of defendant, articles similar to the ones found in possession of defendant, which were identified as property belonging to the Pullman Company which had been stolen. It was also shown that the loss of blankets and linen, such as were found in possession of defendant, occurred prior to the finding of the indictment in this case.. A witness for the state also testified, without objection, that the articles in evidence, found in the possession of defendant, were the property of the Pullman Company, and that they were stolen. It was also shown that the Pullman Company operated sleeping cars through Sheffield, that the cars sometimes remained in the railroad yard overnight, and at such times were in the custody of the conductors and porters, who had access to the equipment, such as the articles stolen; that the Pullman Company never sold any of its blankets or linen, but, when they became unfit, such articles were destroyed; that this was the rule of the company that had obtained for at least 19 years. It appears from the evidence that the articles were found in defendant's possession in September, 1919, and that he got them in the fall of 1918. The value of the goods were shown to be $35.

[1, 2] To sustain a conviction under this indictment, it must be shown, beyond a reasonable doubt, that it was in Colbert county, that it was within three years before the beginning of the prosecution, that the goods were primarily stolen, and that the defendant bought or received them, or concealed or aided in concealing them, with a knowledge that they had been stolen, and without the intent of restoring them to the rightful owner. 34 Cyc. 515; Cohen v. State, 16 Ala. App. 522, 79 South. 621; Martin v. State, 104 Ala. 71, 16 South. 82. All of these necessary ingredients may be, and most of them usually are, shown by circumstantial evidence, from which the jury, using their everyday common sense and observation, must draw their conclusions.

[3-7] That the crime, if crime it was, was committed in Colbert county, is not denied; that it was within three years before the return of the indictment is admitted; that the goods in evidence were stolen, and were the property of the Pullman Company, was testified by the witness Green, without objection. As to the exact date when the property was stolen, it was immaterial, so long as it appears to have been stolen at the time defendant got it, and if stolen, as testified to, it is self-evident that it was before defendant bought it. That the defendant did not intend to return the articles to their true owner is evidenced by the fact that for more than a year he used the property and made no effort to return it. The sole question then remaining as to the elements of the offense is: Did the defendant know, at the time he bought the property, that it was stolen? This, too, is susceptible of proof by circumstances. The Pullman Company lost, or had stolen, in the town and vicinity of defendant's home, blankets, towels, pillow cases, and sheets, which were marked conspicuously with the name of the owner. It is a matter of common knowledge that the Pullman Company is not engaged in trade, and hence the name on the articles was not a trade-mark, as in the case of the name on the Underwood typewriter, alluded to in brief of counsel; but it is apparent that the name was placed there for the purpose of identification. The defendant was found in possession of property, consisting of blankets, towels, and sheets, shown to have been stolen from the Pullman Company. Whether they were stolen from the Pullman Company at Sheffield, or at some other point, was of no consequence. The question was: Were they stolen?

When the defendant was confronted with the facts, and the goods were found in his possession, he gave the "common thief's" answer: That he had bought them from a stranger, but could give no information as to his name or whereabouts. By his own testimony defendant paid only $8.50 for goods worth $35, and at the time showed he thought something was wrong by inquiring of the stranger, who had two suit cases full of the articles, whether there was any danger in his possessing them, and, upon being told that it was "some confiscated stuff" for him (the stranger) to sell off, the defendant's suspicions were lulled to sleep, and he bought them at a price greatly disproportionate to their real value. Guilt may be inferred by the jury from facts and circumstances, in the absence of proof of actual knowledge, and if certain specific facts exist, which would charge a reasonably prudent man with notice, the trial court would be authorized to instruct the jury that they would be warranted in finding that the defendant had knowledge that the goods were stolen. Vacalis v. State (Sup., 1 Div. 155), 86 South. 92.[1] Under the facts in this case, the question of knowledge was properly submitted to the jury.

[1] 204 Ala. 345.

[8] The defendant's counsel asked the defendant, when he was being examined as a witness, this question:

"Did you know, or had you heard, that there was a rule that the Pullman Company did not sell any blankets, sheets, towels, and other things?"

The state objected to this question, and the court sustained the objection, and defendant duly excepted. The state had shown by the testimony of its witnesses the existence of such a rule or custom, and it was competent for the defendant to show that he had no notice or knowledge of it; the defendant not being presumed to know the rules or customs of the Pullman Company. The defendant was entitled to have this evidence go to the jury, along with the other evidence in the case, upon the question of his guilty knowledge at the time he bought the goods.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.